David KASNER and Joan Kasner, Plaintiffs-Appellants,

v.

H. HENTZ & CO. and Ralph Nernberg, Defendants-Appellees.

No. 72–1575.

United States Court of Appeals, Fifth Circuit.

March 15, 1973.

Rehearing Denied April 4, 1973.

**120**

Michael Nachwalter, Miami, Fla., for plaintiffs-appellants.

Sidney M. Aronovitz, Miami, Fla., for defendants-appellees.

Before BROWN, Chief Judge, and TUTTLE and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Plaintiffs-appellants, customers of H. Hentz & Co., a brokerage firm, brought suit against the firm and Ralph Nernberg, its registered agent, to recover damages allegedly occasioned by Nernberg's false dealings and breach of trust in handling plaintiffs' discretionary stock account. More particularly, plaintiffs sought damages from Nernberg and Hentz on three theories: (1) violations of 15 U.S.C. § 78j, 15 U.S.C. § 78o(c)(1)-(2) and Securities Exchange Commission Rules 10b-5 and 15(c)(1)- (2) promulgated thereunder; (2) negligent failure to properly supervise and administer a discretionary account in violation of New York Stock Exchange Rules 401 and 405 and (3) violations of the applicable securities laws, Florida Statutes Annotated § 517.301.

■ Jurisdiction was asserted and is found under 28 U.S.C. §§ 1331 and 1337; § 22(a) of the Securities Act of 1933 [15 U.S.C. § 77v(a)], and § 27 of the Securities Exchange Act of 1934 [15 U.S.C. § 78aa]. Pendent jurisdiction over plaintiffs' counts alleging state securities law violations and common law negligence is also present. McCurnin v. Kohlmeyer & Co., 477 F.2d 113 (5th Cir., 1973).

The gravamen of plaintiffs' complaint was that after suffering near disastrous losses in the stock market with a portfolio structured for a market decline, Dr. and Mrs. Kasner approached their broker Nernberg in September of 1969, intending to direct him to liquidate their holdings. Rather than lose an actively trading account and its attendant commissions, Nernberg, plaintiffs' allege, induced the Kasners to give him trading authority over their stock portfolio and to restructure it for a rising market. Plaintiffs testified that when they approached Nernberg to liquidate their holdings, he said to them:

"And he said to me this would be [the] worst mistake you could make. Let me turn it around, and I'll make your money back in two years; and that he would be the manager of the account. He would take it off my hands, I wouldn't have to worry about it, I could go back to my doctoring, and I wouldn't have to look at these statements—I couldn't read anyway— No matter what they said, I couldn't read these statements; I didn't understand them. And so he offered me to take it over, he would manage it—he was an expert, a professional. I'd already learned that I could not handle the account any more; I was an amateur. I couldn't learn enough to handle this stuff. So—And here he was

offering me to take it off my hands, take it over, make money back in two years.

"I said, 'Fine, then take it over,' and that's essentially how he got the account."

In support of the Kasner's allegations that Nernberg had induced them to remain in the market with a disastrous result, plaintiffs introduced the discretionary authorization they had executed in Nernberg's favor in September of 1969. They also introduced evidence which showed that when signed over to Nernberg's discretion plaintiffs' portfolio, though below margin requirements, had a net equity in excess of $50,000. Less than nine months later, after active trading by Nernberg and maintenance calls, plaintiffs' equity in the account had been reduced to about $3000. Plaintiffs further showed that all transactions occurring in this period of time were initiated solely by defendant Nernberg under the supervision of Hentz & Co. and that plaintiffs had continued the account only at Nernberg's insistence.

In defense of the action Hentz relied on the testimony of Nernberg that he had not guaranteed results, nor that he had fraudulently or negligently managed the account. Defendants further relied on evidence that in the course of the decline in plaintiffs' equity, they had sent plaintiffs numerous notifications that their account was declining. The defense contended that given such knowledge plaintiffs could not justifiably have relied on Nernberg's management. At the close of the testimony on defendants' motion, the district court granted a directed verdict for the defendants.

We reverse as jury questions on several controverted facts appear in this record. Boeing v. Shipman, 411 F.2d 365 (5th Cir., 1969), required that the case be submitted to the jury, the appropriate forum for determination of whether false statements were made, if so whether they were material, and if plaintiffs were justified in their reliance thereon. Evans & Co. v. McAlpine, 434 F.2d 100 (5th Cir., 1970); Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876 (2nd Cir., 1972); Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 337 F.Supp. 107 (N.D.Ala., 1971); Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D.Cal., 1968); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bocock, 247 F.Supp. 373 (S.D.Tex., 1965).

In arguments over the motion for directed verdict, plaintiffs suggested that the case already tried be sent to the jury which had heard it, then should the verdict be against defendants the court could properly consider a defense motion for a judgment n. o. v., which, should the court grant it and later be reversed, would obviate the need for a retrial. This suggestion was not followed and we consequently must remand this cause for re-trial.

The order of the district court is reversed and the cause remanded.