630 So.2d 1199 (1994)
ARTHUR YOUNG & COMPANY, n/k/a Ernst & Young, a foreign General Partnership, Appellant/Cross-Appellee,
v.
MARINER CORPORATION and Dielco Holding Corporation, Appellees/Cross-Appellants.
Nos. 91-1854, 92-0548, 92-0549 and 92-0857.
District Court of Appeal of Florida, Fourth District.
January 19, 1994.
*1200 Stephen N. Young, Kathryn A. Oberly and Thomas J. O'Connell, Ernst & Young, Washington, DC, Joel S. Perwin, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., and Tom Pennekamp, Jr., Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for appellant, cross appellee.
F. Gregory Barnhart, Searcy, Denney, Scarola, Barnhart & Shipley, P.A., and Russell S. Bohn, Edna L. Caruso, P.A., West Palm Beach, for appellees, cross-appellant.
WARNER, Judge.
Arthur Young & Company (AY) appeals a jury verdict against it finding it liable to appellee Mariner for violations of state and federal securities law, common law fraud, and negligence in connection with AY's representation of the sellers of Diversified Electronic Components, Inc. (Dielco) in a leveraged buyout of Dielco by Mariner. In a related appeal AY challenges a post-judgment award of attorney's fees in favor of Mariner. We consolidate these cases for purposes of this opinion and affirm all issues.
In 1984 the principals of Dielco contacted partners in AY to prepare a selling memorandum to effect a sale of Dielco. Thereafter, AY drafted an engagement letter outlining what AY would do to promote and assist in the sale of Dielco. For its services AY would receive a contingent fee based upon the sales price. To promote the sale, AY sent a copy of the selling memorandum to Mariner. AY did not disclose to Mariner its contingent fee agreement or the nature of its relationship to Dielco.
In December of 1984 Mariner signed a letter of intent to buy Dielco. As a condition of the purchase, Mariner required an audit of Dielco's financial statements. Mariner agreed that AY would perform the audit, again without Mariner knowing of the arrangement between AY and Dielco. At trial Mariner experts testified that the audit was flawed in several respects, one of which was to overstate net worth. This was important because the agreed purchase price was based upon a contractual agreement of a minimum net worth of the company which was to be confirmed by the audit. The sale was closed and AY received its contingent fee.
After closing problems began for Dielco which ultimately resulted in its filing for bankruptcy and various lawsuits between Dielco *1201 principals and Mariner. Mariner brought this suit against AY claiming that it had violated both state and federal securities law and committed fraud and negligence in connection with the sale of Dielco to Mariner based upon two primary allegations: first, that AY had received the undisclosed contingency fee which impaired its independence and that had Mariner known of the fee it would have not relied on AY's audit; second, that AY had failed to properly audit the company which resulted in an overstatement of shareholder equity and that had this been made known to Mariner, it would not have purchased Dielco.
AY raised several defenses to the charges, and through a lengthy and complex trial each party put on substantial evidence in support of their respective positions. The jury found for Mariner on both claims and awarded damages. On the rescission claim they awarded $1,291,000. Pursuant to the securities law claims and compensatory and punitive damages on the common law claims, they awarded damages that equaled the amount of the rescission claims. The trial court entered judgment for the plaintiffs in the amount of $1,291,000, and this appeal followed. Appellees cross-appealed the damage award.
We affirm as to all issues. For the most part the issues raised deal with the sufficiency of evidence to prove the essential elements of the various causes of action, which the jury resolved against AY. We find there was competent, substantial evidence to support the verdicts. However, we find it necessary to address more fully the question of liability under the Florida Securities Act.
Mariner sued AY in one count for fraudulent misrepresentations in connection with the sale of Dielco which violated Fla. Stat. 517.301. It alleged AY was liable under Section 517.211(2) which states:
Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.
In moving for directed verdict at the close of Mariner's case, AY contended it was not liable under the terms of the statute. Noting that it was not the seller of the securities, AY also claimed it was not an agent of the seller within the definitions of the statute, quoting to the court the definitions of agent as contained in section 517.021, Florida Statutes (1985). On appeal both appellant and appellee have referred us to the 1985 version of the statute in their arguments on this issue. The sale of the stock was closed in April 1985. The quoted definitions used by the parties in this appeal were adopted in 1985 but did not take effect until July 1, 1985, after the sale. The 1983 statute is therefore the applicable statute.[1] It provided:
517.021 Definitions.  When used in this chapter, unless the context otherwise indicates, the following terms have the following respective meanings:
(3) "Agent" means "salesman" as herein defined.
(18) "Salesman" means any natural person, other than a dealer, employed, appointed, or authorized by a dealer or issuer to sell securities in any manner or act as an investment adviser as defined in this section.
.....
AY also contends that certified public accountants are specifically exempted from liability under § 517.021(9), Fla. Stat. (1983)[2] when rendering services in connection with the regular practice of accounting. Mariner rejects both arguments, disposing of the second *1202 most easily by noting that the brokerage services provided by AY in this case were not connected to the regular practice of its profession but were a brand new endeavor for it. There is evidence in the record to support this view. Therefore, we hold that AY is not exempt under this statutory exclusion.
However, AY's first contention requires more analysis. Mariner correctly notes that the section giving definitions begins:
When used in this chapter, unless the context otherwise indicates, the following terms have the following respective meanings:
Section 517.021, Fla. Stat. (1983) (emphasis supplied). Thus, the definitions apply throughout the provisions of the chapter unless the context of a particular section "otherwise indicates." Mariner contends that in section 517.211(2) the context indicates that the use of the word "agent" means other than the narrow definition of "salesman" or natural person.
When courts are required to interpret statutory language, "a statute should be construed and applied so as to give effect to the evident legislative intent, regardless of whether such construction varies from the statute's literal meaning." Griffis v. State, 356 So.2d 297, 299 (Fla. 1978). Nevertheless, that intent is determined primarily from the language of the statute. St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071 (Fla. 1982). "When the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute itself must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla. 1985).
The definition section of chapter 517 invites the statute reader to consider one precise meaning of the words defined therein but also suggests that another meaning may be appropriate if the context "otherwise indicates." The use therefore of the defined meaning of specific terms throughout the remainder of the statute is not clear and unambiguous, i.e., capable of only one plain meaning.
"Context" itself has two meanings according to Webster's New World International Dictionary (college ed. 1966):
1. the parts of a sentence, paragraph, discourse, etc. that occur just before and after a specified word or passage, and determine its exact meaning;
2. the whole situation, background, or environment relevant to some happening or personalty.
Thus, "context" invites the reader to make both a search for what the internal text means and what comprises the external context of the statute, namely, what is the problem which the legislature addressed in the statute. Thus, the external context plays a part in determining what the text means.[3]
"Agent" has a precise statutory definition of "salesman" who is "a natural person." It also has a well accepted common definition in which the entire theory of common law agency may be included. Section 517.021 permits the court to consider the context of the use of the word "agent" and to reject the statutory definition if it does not fit the context.
We look first to the internal context of the word both within section 517.211 and in harmony with the interlocking statutes.[4] If we were to substitute the statutory definition for "agent" into the text of the statute, we would have the following:
Any person ... selling a security in violation of s. 517.301, and every director, officer, partner, or natural person, other than a dealer, employed, appointed, or authorized by a dealer or issuer to sell securities in any manner or act as an investment *1203 advisor of or for the ... seller, if the director, officer, partner or agent has personally participated or aided in making the sale or purchase is jointly or severally liable to the person ... purchasing the security.
As the salesman can be employed by the dealer, or broker, and not directly by the seller, the statute permits recovery against the dealer's employee but not the dealer itself (who is not itself a seller) if a literal reading of the statute is allowed. Furthermore, because the definition of dealer excludes "salesman", see section 517.021(9), Florida Statutes (1984 Supp.), a broker who is a sole proprietor and, as principal, commits fraud in brokering a transaction for a seller would not be liable to the purchaser, because he is not an "agent" within the statutory definition. The use of the statutory definition creates illogical consequences which comport neither with reason nor with legislative purpose.
When we examine section 517.301, for which section 517.211 provides a remedy, it also fails to support a literal application of the statutory definition of "agent" in section 517.211. Section 517.301, Florida Statutes (1983) provides:
Fraudulent transactions; falsification or concealment of facts. It is unlawful and a violation of the provisions of this chapter for a person:
(1) In connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:
(a) To employ any device, scheme, or artifice to defraud;
(b) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
(c) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.
Any "person" may be guilty of fraudulent practices under this section. "Person" includes natural persons, corporations, partnerships, and other associations. Fla. Stat. § 517.021(15) (1983). Thus, a broker/dealer which is a corporation or partnership can be found in violation of this section. As noted above, however, application of the statutory definition of agent in section 517.211 leaves the dealer without statutory liability but holds its employee/salesman liable for the violation.[5]
The legislative purpose of the Florida Securities and Investor Protection Act was, as its title makes clear, to protect the public from fraudulent and deceptive practices in the sale and marketing of securities. State v. Beeler, 530 So.2d 932, 934 (Fla. 1988); Stottler Stagg & Associates, Inc. v. Argo, 403 So.2d 617 (Fla. 5th DCA 1981); O'Neill v. State, 336 So.2d 699 (Fla. 4th DCA 1976); Nichols v. Yandre, 9 So.2d 157 (Fla. 1942). As such, it is to be given a broad and liberal interpretation to effectuate its purpose. See McElfresh v. State, 9 So.2d 277 (Fla. 1942). Certainly, the context of the use of the word agent is to make liable all those representatives and direct participants in the sale of the security who commit fraud as a means of inducing the purchaser to buy. To conclude that only natural persons are included within the "agent" designation would exclude an entire array of related "persons," other than the actual seller, who could violate section 517.301 as agents of the seller. This leads to a substantively absurd result which comports neither with the legislative purpose of the statute nor with the ordinary and usual construction of the meaning of the term. Courts are not compelled to construe a statute in *1204 this way. Weber v. Dobbins, 616 So.2d 956, 958 (Fla. 1993), quoting State v. Egan, 287 So.2d 1 (Fla. 1973) ("a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion."); see also Lawson v. Suwanee Fruit & Steamship Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949) (court concluded that while "disability" was specifically defined in one section of a statute, in another portion of the same statute it was not used in the same sense, for to do so would defeat the purpose of the statute.) As Justice Scalia stated in concurring in Green v. Bock Laundry Machine Co., 490 U.S. 504, 527-30, 109 S.Ct. 1981, 1994-95, 104 L.Ed.2d 557, 575-576 (1989):
We are confronted here with a statute which, if interpreted literally, produces an absurd, and perhaps unconstitutional result.
.....
The meaning of terms on statute books ought to be determined ... on the basis of which meaning is (1) most in accord with context and ordinary usage, and thus most likely to have been understood by the whole Congress which voted on the words of the statute (not to mention the citizens subject to it), and (2) most compatible with the surrounding body of law into which the provision must be integrated.
In light of both the legislative purpose and the context of the surrounding body of law into which section 517.211 and "agent" must be integrated, we conclude that its use in this section means to incorporate the common law definition of agency.
We are helped in our conclusion by the fact that no court has ever held that a legal entity cannot be liable as an agent under section 517.211(2). In fact, the cases are legion which have allowed recovery. In interpreting section 517.211(2), the court in First Union Brokerage v. Milos, 717 F. Supp. 1519, 1524 (S.D.Fla. 1989), stated "Section 517.211 expressly provides for liability premised upon the theory of agency." Again, in an action against an accounting firm for activities similar to AY's, a federal district court denied a motion to dismiss a cause of action against the accounting firm, on the ground that it was the seller's agent for the purpose of selling the securities. In re Sahlen & Associates Securities Litigation, 773 F. Supp. 342, 372 (S.D.Fla. 1991).
In E.F. Hutton & Co., Inc. v. Rousseff, 537 So.2d 978 (Fla. 1989), E.F. Hutton, a corporation, was sued in federal court on both federal and state securities violations for misrepresentations its employees made in connection with a sale of securities in which it acted as the exclusive sales agent for the seller. In answering a question certified by the Eleventh Circuit, the court held that the plaintiff did not have to prove loss causation in order to recover for Hutton's fraud. The court noted that section 517.211 required buyer/seller privity, and Hutton could be liable as agent for the seller. Upon receiving the answer to the certified question, the Eleventh Circuit affirmed the jury verdict holding Hutton liable as the seller's agent under section 517.211. Rousseff v. E.F. Hutton Co., 867 F.2d 1281 (11th Cir.1989). See also, generally, Kane v. Shearson Lehman Hutton, Inc., 916 F.2d 643 (11th Cir.1990); Kasner v. H. Hentz & Co., 475 F.2d 119 (5th Cir.), cert. denied, 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 57 (1973); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Del Valle, 528 F. Supp. 147 (S.D.Fla. 1981); Friedman v. Bache & Co., 321 F. Supp. 347 (S.D.Fla. 1970), aff'd, 439 F.2d 349 (5th Cir.1971); Azar v. Richardson Greenshields Securities, Inc., 528 So.2d 1266 (Fla. 2d DCA 1988); and Merrill Lynch, Pierce, Fenner & Smith v. Byrne, 320 So.2d 436 (Fla. 3d DCA 1975).
There was substantial evidence that AY was acting as the agent of the seller in securing the sale of Dielco. The accounting firm signed an agreement to prepare a selling memorandum, contact potential buyers, assist in the negotiation of the sale, and "represent your [Dielco's] interests." For their services, they were to be paid a contingent fee based on the amount of the selling price due on the closing of a sale. They were acting as any broker acts in a sale.
Considering the anomaly which would be created by determining that an individual would be liable but the legal entity would not, we agree with appellee that the context dictates *1205 that any agent of the purchaser or seller which has personally participated in the sale would be liable for violations of section 517.301, Florida Statutes, whether that agent is a corporation, partnership or natural person. Thus, in this section of the statute "agent" is used in its ordinarily understood sense of representation of a principal, rather than its narrower statutory definition.
We therefore affirm as to all issues.
GUNTHER, J., and DOWNEY, JAMES C., Senior Judge, concur.
NOTES
[1] While the definition of "agent" in the 1985 statute was changed to "associated person," the definition of associated person merely expanded the category of natural persons liable. The analysis used in this opinion would change little if the 1985 definition of agent were used. The legislature amended the statute in 1990 to delete entirely the word "agent" as a defined term in § 517.021, chapter 90-362, Laws of Florida.
[2] The 1985 version is at § 517.021(12).
[3] Two articles which explain more fully theories and models of statutory interpretation, including the distinction between internal and external context, are William D. Popkin, Law Making Responsibility and Statutory Interpretation, 68 Ind. L.J. 865 (Summer 1993), and William D. Popkin, The Collaborative Model of Statutory Interpretation, 61 S.Cal.L.Rev. 541 (March 1988). Professor Popkin has recently authored a textbook on legislation, titled Materials on Legislation: Political Language and the Political Process, The Foundation Press (1993).
[4] "We do not, however, construe statutory phrases in isolation; we read statutes as a whole." United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984).
[5] These examples also illustrate that the use of the salesman definition of "agent" in section 517.211 would create a classification scheme for liability which appears to lack any rational basis, and thus is potentially unconstitutional as violative of the equal protection clause. See Dep't. of Health and Rehabilitative Servs. v. Heffler, 382 So.2d 301 (Fla. 1980). Where a statute is susceptible to two interpretations, we should construe it to avoid an unconstitutional result. See Leeman v. State, 357 So.2d 703 (Fla. 1978).