DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PABLO ALFONSO,**
Appellant,

v.

**JESSICA GORDON ALFONSO,**
Appellee.

No. 4D2024-0698

[May 7, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Leatha D. Mullins, Judge; L.T. Case No. 56-2020-DR-001553.

Charles M. Auslander, John G. Crabtree and Brian C. Tackenberg of Crabtree & Auslander, Key Biscayne, and Elida Morin of the Law Office of Elida M. Morin, P.A., Miami, for appellant.

Christopher R. Bruce and Jennifer B. Rubin of Bruce Law Firm, P.A., West Palm Beach, for appellee.

DAMOORGIAN, J.

Pablo Alfonso ("Former Husband") appeals the final judgment dissolving his marriage to Jessica Gordon Alfonso ("Former Wife"). Former Husband raises the following arguments on appeal: (1) the court could not award permanent alimony in this case because the action was still "pending" when the statute eliminating permanent alimony took effect; (2) even if the court could award permanent alimony, the award was not based on competent substantial evidence and the amount was excessive; (3) the court erred in requiring Former Husband to maintain Former Wife as a beneficiary on a life insurance policy; and (4) the court erred in awarding Former Wife attorney's fees based on need and ability to pay. We affirm on issues 2 and 4 without further comment. For the reasons discussed below, we affirm on issue 1 and reverse on issue 3.

The parties were married in 2017. At the time of the marriage, Former Husband was twenty-five years old and Former Wife was thirty-two years old. In 2018, Former Wife suffered a stroke which rendered her disabled.

In July 2020, Former Wife petitioned to dissolve the marriage. In her petition, Former Wife requested permanent alimony on the basis that the stroke rendered her permanently disabled and unable to work or perform routine activities. Former Wife also requested that Former Husband be required to maintain life insurance listing Former Wife as a beneficiary in the amount reasonably necessary to secure the alimony payment.

The matter proceeded to a bench trial in April 2023. On June 30, 2023, the trial court entered a detailed final judgment wherein it awarded Former Wife permanent periodic alimony. The same day the trial court entered the final judgment, the Governor of Florida signed into legislation an alimony reform statute that removed the authority of trial courts to award permanent alimony. Ch. 2023-315, §§ 1, 5, Laws of Fla. The amended statute, however, did not take effect until the following day, July 1, 2023. *Id.* Specifically, the amended statute applies "to all initial petitions for dissolution of marriage or support unconnected with dissolution of marriage pending or filed on or after July 1, 2023." § 61.08(11), Fla. Stat. (2023).

On July 14, 2023, Former Husband filed a motion for rehearing, new trial, and/or to alter and amend the final judgment. Former Husband argued, among other things, that the trial court erred as a matter of law in granting permanent alimony because the amended section 61.08 eliminated permanent alimony as a permissible award. Although the motion acknowledged the amended section 61.08's effective date, Former Husband argued the amended section 61.08 applied because the action was still "pending" as a matter of law where the time for rehearing had not expired.

On February 28, 2024, the trial court denied the portion of Former Husband's motion seeking application of the amended section 61.08. In so doing, the trial court reasoned:

> In awarding alimony in the case herein, the Court applied the **pre**-July 1, 2023 § 61.08, *Florida Statutes* because the law was in effect at the time of the final hearing and most notably, on the date the Final Judgment of Dissolution of Marriage was entered *prior* to July 1, 2023. Upon filing the Final Judgment on June 30, 2023, the case was closed by the Clerk of Court on the Clerk's Docket. The Courts have long held that an action of law is ["]pending until a final judgment is entered . . . ." *Fawcett v. Weaver*, 121 Fla. 245, 246 (Fla. 1935). Further, filing a Motion for Rehearing does not delay the

2

finality of a Final Judgment. *See Barnett v. Barnett*, 743 So. 2d 105 (Fla. 4th DCA 1999).

That same day, the trial court entered an amended final judgment of dissolution of marriage *nunc pro tunc* to June 30, 2023, wherein it corrected a scrivener's error regarding equitable distribution. The amended final judgment did not in any way alter the original alimony award. This appeal follows.

We begin our analysis by addressing Former Husband's argument that the trial court erroneously applied the prior version of section 61.08 in effect on June 30, 2023. As noted above, on July 1, 2023, the legislature significantly amended section 61.08 and eliminated permanent alimony as a permissible award. *See* Ch. 2023-315, § 1, Laws of Fla. The amended section 61.08 applies "to all initial petitions for dissolution of marriage or support unconnected with dissolution of marriage pending or filed on or after July 1, 2023." § 61.08(11), Fla. Stat. (2023).

On appeal, Former Husband argues the underlying action was still "pending" when the legislature abolished permanent alimony "because a timely motion for rehearing was filed and not ruled upon until February 2024, when the Amended Final Judgment was also entered, well past the statutory amendment's effective date of July 1, 2023." In other words, "[u]ntil the trial court resolved [Former Husband's] motion for rehearing and entered its Amended Final Judgment, its judicial labor was not complete, and the case remained pending." We disagree.

In support of his position that the underlying dissolution action was still "pending" when the amended statute took effect, Former Husband primarily relies on *Pruitt v. Brock*, 437 So. 2d 768 (Fla. 1st DCA 1983), and the cases cited therein. The issue in *Pruitt* concerned whether service of a timely motion for rehearing tolled the commencement of the one-year period of limitation provided in Florida Rule of Civil Procedure 1.540(b). *Id.* at 770. In concluding that tolling was proper, the court interpreted the term "final judgment," as written in rule 1.540(b), and concluded that a final judgment does not occur until a motion for rehearing under the same rule is disposed. *Id.* at 772. In arriving at its conclusion, the court looked at the tolling effect of the service of a timely motion for rehearing for appellate purposes, and rationalized that "[a] timely motion for rehearing, in our view, has the same purpose for either appellate, or relief from judgment purposes: It delays the termination of judicial labor at the trial level." *Id.*

We find *Pruitt* distinguishable. Aside from the fact that *Pruitt* interprets a rule of civil procedure that affects the timing of motions rather than substantive law affecting rights, the legal analysis in that case was based on the same legal principles applied in determining the finality of a case for appellate purposes. A significant difference, however, exists in determining the finality of a judgment for appellate purposes as opposed to determining the effective date of a dissolution judgment. *See Barnett v. Barnett*, 743 So. 2d 105, 106–08 (Fla. 4th DCA 1999) (recognizing that "the finality of a final judgment for the purpose of transferring jurisdiction to the appellate court, as opposed to the effective date of a divorce judgment," are two separate issues, and holding that the partial final judgment of dissolution became effective "when the trial judge signed it" notwithstanding the fact that the period for filing a motion for rehearing had not yet expired); *Gaines v. Sayne*, 764 So. 2d 578, 585 (Fla. 2000) (citing *Barnett* and stating "[t]he fact that our procedural rules allow time for parties to seek rehearing or an appeal from a final judgment should not automatically render the judgment ineffective as to the matters resolved by the trial court," and further stating "that procedural rules established to determine finality for the purpose of seeking rehearing or appeal do not necessarily affect the efficacy of a validly entered decree").

Here, on June 30, 2023, when the trial court entered the final dissolution judgment, the amended section 61.08 was not yet in effect. As the June 30, 2023, final judgment disposed of all issues in the initial dissolution petition, and as the amended final judgment was properly entered *nunc pro tunc* to June 30, 2023, the initial dissolution petition was not "pending" on or after July 1, 2023, notwithstanding the filing of Former Husband's motion for rehearing. *See Stockdale v. Stockdale*, No. 1D2024-1371, 2025 WL 1062621, at *2–*3 (Fla. 1st DCA Apr. 9, 2025) (recognizing that it is the *initial petition* that must remain pending, not *the action*, for the amended section 61.08 to apply, and further recognizing that "as a matter of its ordinary meaning and its meaning within the practice of law, 'pending' means that the term it modifies (here, a petition) has not been decided"); *see also Maxfly Aviation Inc. v. Cap. Airlines Ltd.*, 843 So. 2d 973, 975–76 (Fla. 4th DCA 2003) (noting that a "trial judge's careful addition of the words *nunc pro tunc* to the amended judgment indicates rather strongly that the court itself intended no material or substantive change"). To hold otherwise would be to conflate a case's finality for appellate purposes with the time when a dissolution judgment becomes effective under substantive law.

In arriving at our holding, we note two things. First, the legislature did not use the term "final judgment" in section 61.08(11), Florida Statutes (2023). Second, the Florida Senate Bill Analysis and Fiscal Impact

Statement relating to the amendment states that the changes to alimony are "applicable to any final judgment **entered** on or after July 1, 2023." Fla. S. Comm. on Rules, CS/SB 1416 (2023) Staff Analysis (April 4, 2023) (emphasis added). The lack of the term "final judgment" in section 61.08(11), and the use of the word "entered" in the amendment's staff analysis, make clear that the amended section 61.08 was not intended to apply to cases in which the trial court had entered a final judgment prior to the amended section 61.08's effective date, regardless of post-judgment motions or appeals. *Cf. Hamblen v. Pilot Travel Ctrs., LLC*, 312 So. 3d 218, 220–22 (Fla. 1st DCA 2021) (concluding that without a statutory definition to the contrary, the legislature intended for the undefined term "final judgment" in section 768.24 of the Florida Wrongful Death Act to occur after the exhaustion of post-verdict motions, and because the survivor had died while the motion for new trial was pending, the survivor died before final judgment and could not recover for mental pain and suffering).

Turning to the life insurance issue, the evidence at trial established that Former Husband received a life insurance policy with a benefit equal to one year's salary while employed with his former employer. At the time of trial, Former Husband was still receiving employment benefits from his former employer at no additional costs to him as part of a severance agreement, including his life insurance policy. Former Husband would continue to receive those benefits, however, for only two more months. In the final judgment, the trial court found that life insurance was available to Former Husband by virtue of his severance agreement. The trial court accordingly ordered Former Husband to keep Former Wife "as the beneficiary of the life insurance provided under his current payroll policy and any comparable replacement policy he has in the future in the amount of at least his current one-year salary annualized." The final judgment did not contain any findings regarding the cost or availability of a comparable life insurance policy after two months had expired.

On appeal, Former Husband argues the trial court erred in requiring him to maintain Former Wife as a beneficiary on any comparable life insurance policy without first considering the cost and availability of a comparable life insurance policy. We agree. *See Karkhoff v. Robilotta*, 309 So. 3d 229, 236 (Fla. 4th DCA 2020) (holding that when a trial court requires a spouse to purchase an insurance policy to protect an alimony award, it "must make specific evidentiary findings regarding the availability and cost of insurance, the obligor's ability to pay, and the special circumstances that warrant the requirement for security of the obligation," and "[t]he failure to make the necessary findings in support of the maintenance of life insurance is reversible error" (internal citations

omitted)).  Accordingly, we reverse and remand for the trial court to make the necessary findings.  *See id.* at 237.

*Affirmed in part, reversed in part, and remanded.*

GERBER, J., concurs.
KLINGENSMITH, C.J., dissents with opinion.

KLINGENSMITH, C.J., dissenting.

This case presents an issue of first impression for our court under section 61.08, Florida Statutes (2023), which was amended to eliminate permanent alimony as an available form of alimony in all cases pending.  *See* Ch. 2023-315, §§ 1, 5, Laws of Fla.  Under the amended section 61.08, "[t]he court shall apply this section to all initial petitions for dissolution of marriage or support unconnected with dissolution of marriage **pending** or filed on or after July 1, 2023."  § 61.08(11), Fla. Stat. (2023) (emphasis added).  Unfortunately, the legislature did not define what it means for an action to be "pending" regarding the application of this prohibition.  The amended section 61.08's plain language indicates the legislature's intent to proscribe permanent alimony in those cases where the judicial labor in the trial court has not ended prior to jurisdiction vesting in the appellate courts, or in other words, where a judgment has not become "final."  This interpretation also comports with that of analogous cases decided in this court and others, including the Second District's opinion in *Woodward v. Woodward*, 400 So. 3d 861, 863-64 (Fla. 2d DCA 2025), which reversed a permanent alimony award where the dissolution petition remained "pending" when the legislature eliminated permanent alimony because the final judgment was before the district court on appeal.  Therefore, the majority opinion conflicts with our prior case law as well as with *Woodward*.  For this reason, I dissent and would certify conflict with the Second District.

"When courts are required to interpret statutory language, 'a statute should be construed and applied so as to give effect to the evident legislative intent, regardless of whether such construction varies from the statute's literal meaning.'"  *WFTV, Inc. v. Wilken*, 675 So. 2d 674, 677 (Fla. 4th DCA 1996) (quoting *Arthur Young & Co. v. Mariner Corp.*, 630 So. 2d 1199, 1202 (Fla. 4th DCA 1994)).  Courts derive that intent "primarily from the language of the statute."  *Id.* (quoting *Arthur Young*, 630 So. 2d at 1202).  Courts do not resort to the rules of interpretation and construction if "the language of the statute is clear and unambiguous and conveys a clear and definite meaning."  *Valencia Rsrv. Homeowners Ass'n, Inc. v. Boynton Beach Assocs., XIX, LLLP*, 278 So. 3d 714, 717 (Fla. 4th DCA

2019) (quoting *A.R. Douglass, Inc. v. McRainey*, 102 Fla. 1141, 137 So. 157, 159 (1931)). Thus, "[t]he plain meaning of the statute is always the starting point in statutory interpretation." *Fla. Dep't of Agric. & Consumer Servs. v. Mendez*, 98 So. 3d 604, 607 (Fla. 4th DCA 2012) (quoting *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007)).

"A subsection must be read in the context of the whole." *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 302 (Fla. 2017). Specifically, when a term in a statute is undefined, "courts must look to its plain and ordinary meaning, which can be discerned from a dictionary." *Gyongyosi v. Miller*, 80 So. 3d 1070, 1075 (Fla. 4th DCA 2012) (citing *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 104 (Fla. 2011)). A court may also turn to case law in its interpretation. *See Nunes v. Herschman*, 310 So. 3d 79, 82 (Fla. 4th DCA 2021) (citing *State v. Brake*, 796 So. 2d 522, 528 (Fla. 2001)); *see also Schoeff*, 232 So. 3d at 304-05.

In *Hamblen v. Pilot Travel Centers, LLC*, 312 So. 3d 218 (Fla. 1st DCA 2021), the First District found that a judgment awarding damages to a survivor in a wrongful death action was not final where the survivor died while a motion for new trial was pending. The court held, when determining if the trial court's judgment became final when applying section 768.24, Florida Statutes (2013), "[t]his finality is reached when the trial court's judicial labor is at an end." *Id.* at 222. In reaching this conclusion, the *Hamblen* court noted that the legislature had defined what a final judgment is only twice in statutory law, leaving the term undefined in hundreds of different statutes. *Id.* at 220. The two times it was defined, the legislature intended final judgments to occur after the exhaustion of appellate remedies. *Id.* (citing §§ 111.071(2), 501.203(1), Fla. Stat. (2019)). But as *Hamblen* also noted, the legislature intended a judgment to be a final judgment when entered by the trial court without regard for post-judgment motions or appeals when applying various other statutes. *Id.* (citing §§ 45.031(1), 55.01, 77.081(2), 702.10(1), Fla. Stat. (2019)). "In general, Florida courts have 'defined "final judgment" different ways in different contexts.'" *Id.* (citation omitted).

The *Hamblen* court stated that "neither the verdict nor the judgment entered reflecting it are final when a motion for a new trial is pending" and reasoned that "[a] trial judge is not a wallflower when faced with a motion for a new trial [as] [t]he motion requires the trial judge to weigh the evidence." *Id.* at 221. Ultimately, the First District found the reasoning in *Pruitt v. Brock*, 437 So. 2d 768, 772 (Fla. 1st DCA 1983), persuasive, which "was decided on the text and well-established law holding that the filing of a motion for rehearing tolls the finality of the judgment." *Hamblen*, 312 So. 3d at 221. Supporting that interpretation, Black's Law Dictionary also

defines a final judgment as "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment." JUDGMENT, Black's Law Dictionary (11th ed. 2019).

In *Gaines v. Sayne*, 764 So. 2d 578 (Fla. 2000), the Florida Supreme Court was presented a situation where, like in this case, the trial court entered a final judgment of divorce, and a motion for rehearing was filed relating to issues collateral to the dissolution of the marriage, including the alimony award. *Id.* at 579-80. The Court held that whether a judgment is considered "final" in whole or in part depended upon what issues were subject to the filing of a post-trial motion. *Id.* at 584-86. Thus, while the written judgment of dissolution for the Gaineses was not voided by the subsequent death of a party because that part of the judgment was never contested post-trial, the remaining issues properly raised on rehearing that related solely to matters collateral to the adjudication of dissolution, prevented *that portion* of the judgment from becoming "final." *Id.* at 586. We reached a similar conclusion in another case that preceded *Gaines*. *See Barnett v. Barnett*, 743 So. 2d 105 (Fla. 4th DCA 1999). The holdings in both of these cases are consistent with the conclusion reached by the *Hamblen* court.

Similarly, in the present case, the fact that former husband filed a timely post-trial motion on collateral issues to the dissolution that included a request to reconsider the alimony issue meant that the case remained "pending" in the trial court under the amended section 61.08 until that motion was resolved. *See Woodward*, 400 So. 3d at 863-64 (reversing permanent alimony award because dissolution petition was pending within meaning of amended section 61.08 where final judgment was entered on February 17, 2023, but appeal was pending in the district court on July 1, 2023); *see also Stockdale v. Stockdale*, No. 1D2024-1371, 2025 WL 1062621, at *3-*5 (Fla. 1st DCA Apr. 9, 2025) (finding dissolution pending for application of the amended section 61.08 because judicial labor remained where magistrate completed dissolution hearing in May 2023 but did not submit its recommendation to circuit court until a month after the effective date of the statute).

Admittedly, the law about the "finality" of judgments is very inconsistent. As these cases show, courts have treated "finality" as a flexible concept. From the *Gaines* case, it is clear not all parts of a judgment necessarily become final at the same time. For example, an issue affirmed by appellate mandate is considered final and may not be revisited by the trial court, but a separate issue within the same case reversed by the appellate court is not final where it still requires judicial

labor.  *See Brennan v. Brennan,* 184 So. 3d 583, 588-89 (Fla. 4th DCA 2016).  In yet another example, interest may begin to accrue as of the date a judgment is first entered, though not all judicial labor in the trial court pertaining to post-trial motions has ended.  *See McNitt v. Osborne*, 371 So. 2d 696, 697 (Fla. 3d DCA 1979) (holding interest on a final judgment runs from the date it is signed and filed, not when post-trial motions have been disposed of, so as to render the judgment final for appeal).  And as previously noted, a matter may be treated as "final" for the purposes of enabling appellate review despite a trial court retaining jurisdiction to decide other issues.  *See, e.g., Schultz v. Schickedanz*, 884 So. 2d 422, 424 (Fla. 4th DCA 2004) (a trial court retains jurisdiction to award post-trial attorney's fees as it "does not interfere with the authority of the appellate court" in consideration of matters in the main appeal); *Keitel v. Keitel*, 724 So. 2d 1255, 1258 (Fla. 4th DCA 1999) (trial court had jurisdiction after entry of final judgment and during appeal to enter order regarding child's pick up where court retained jurisdiction under Fla. R. App. P. 9.600(c)).

Treating this case as "pending" for the trial court to apply the amended section 61.08 not only gives force and effect to the legislature's clear intent expressed by the language which it chose to use in the amended section 61.08, but also comports with how we and others have applied the concept of "finality" in most contexts.  Because we must apply the amended section 61.08 as worded by the legislature, I would reverse the trial court's permanent alimony award consistent with *Woodward*.

*         *         *

***Not final until disposition of timely filed motion for rehearing.***