**JEFF ISAAC RARE COINS, INC. and Jeff Isaac, Plaintiffs,**

v.

**Mark YAFFE and National Gold Exchange, Inc., Defendants.**

No. CV-91-4414.

United States District Court, E.D. New York.

April 27, 1992.

**14**

David H. Ledgin, Mineola, N.Y., for plaintiffs.

Roger S. Thompson, Morrison Law Firm, Mt. Vernon, N.Y., for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action among parties of diverse citizenship. The defendants seek to dismiss all four causes of action under Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons set forth below, the motions of the defendants are granted; the complaint is dismissed in its entirety.

## FACTS

Plaintiffs are Jeff Isaac Rare Coins, Inc. ("JIRC") and Jeff Isaac, president of JIRC. JIRC is a New York corporation; apparently, JIRC engages in the business of buying and selling investment-grade coins. Defendants are National Gold Exchange, Inc. ("NGE") and Mark Yaffe, an officer of NGE. NGE is a Massachusetts corporation with its principal place of business in the State of Florida. NGE also engages in the business of buying and selling investment-grade coins. The dispute that underlies this action involves the transfer of certain valuable coins from the defendants to the plaintiffs. The plaintiffs claim that the coins were sent to the plaintiffs for resale in New York but that the defendants misrepresented to the plaintiffs who owned those coins.

In brief, the plaintiffs appear to argue that the coins were sent to the plaintiffs by the defendants on the understanding that the coins were in fact owned by Martin Haber of Numismatic Investments of Florida ("NIOF"). The plaintiffs, on receipt of the coins, decided to retain the coins and to apply them as a set-off against a debt owed to the plaintiffs by Haber and by NIOF. Thereafter, the defendants informed the plaintiffs that they, the defendants, were in fact the owners of the coins and that the plaintiffs should either return the coins or compensate the defendants for the value of the coins. When the plaintiffs refused to return the coins, the defendants instituted arbitration proceedings; the plaintiffs persuaded a New York state court to stay those proceedings. The plaintiffs thereupon filed this action in New York state court (it was subsequently removed by the defendants to this court), and the defendants filed an action against the plaintiffs in Florida state court. It is not clear which of the actions—this one or the Florida one—was commenced first.

The complaint alleges four causes of action (this court earlier dismissed a fifth cause of action for lack of personal jurisdiction): (1) fraud; (2) abuse of process; (3) harassment and invasion of privacy; and (4) mail and wire fraud. The plaintiffs seek over $1,000,000.00 in damages. The defendants have moved to dismiss the complaint in its entirety under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## DISCUSSION

1. *Rule 9(b)*

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud

... the circumstances constituting fraud ... shall be stated with particularity." The Second Circuit has construed this rule to require that allegations of fraud specify the time, the place, the speaker, and the content of the alleged fraudulent statement. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). Moreover, if the complaint alleges fraud by more than one defendant, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Against the somewhat elusive standards of Rule 9(b), the purposes of the rule are instructive: "The three-fold basis for the rule lies in the need 'to provide a defendant with fair notice on the basis of the plaintiff's claim, to protect a defendant's reputation from groundless accusations of fraud, and to prevent strike suits brought for settlement value.'" *United States v. Rivieccio*, 661 F.Supp. 281, 290 (E.D.N.Y.1987) (citations omitted). This court has remarked before, however, that determination of the adequacy of a complaint under Rule 9(b) is ultimately and necessarily fact-specific; accordingly:

> "[Rule] 9(b) particularity is much like obscenity, legally speaking: 'I know it when I see it,' *Jacobellis v. Ohio*, 378 U.S. 184, 197 [84 S.Ct. 1676, 1683, 12 L.Ed.2d 793] (1964) (Stewart, J., concurring)."

*Rivieccio*, 661 F.Supp. at 290 (E.D.N.Y. 1987).

In this case, the plaintiffs have fallen far short of the pleading standard set by Rule 9(b). They have not set forth the "time, place, speaker and content of the alleged fraudulent statements or misrepresentations;" they have not indicated the alleged role of each defendant in the claimed fraud; and, most importantly, they have not given the defendants fair notice of the basis for their claim. On the first cause of action, the plaintiffs state their allegations as follows:

> On or about January 8, 1991, defendants, acting for each other and independently, conspired to defraud ... the plaintiffs, in that they falsely and fraudulently repre-sented that they had possession of certain rare coins which were in fact owned by another person or entity.
>
> [I]n furtherance of the aforesaid fraud, they represented terms of a proposed transaction, concerning these coins, with the plaintiffs, and proceeded to transmit said coins to the plaintiffs in early January, 1991....
>
> .　　.　　.　　.　　.
>
> [D]efendants in fact did not have any valid ownership rights to said coins at the time they represented and/or claimed that they did.
>
> .　　.　　.　　.　　.
>
> [A]t the time the defendants proposed the aforesaid transaction and forwarded the subject coins to the plaintiffs, defendants made misrepresentations about material terms of the transaction....

Complaint ¶¶ 7–12. These vague allegations indicate at best only the approximate date of the alleged fraudulent statements and the possible partial content of one of those fraudulent statements: That is, these allegations contend only that in early January of 1991, the defendants made a false representation to the plaintiffs about who owned certain investment-grade coins. The complaint does not indicate precisely who made this alleged false statement or when the statement was made. The complaint does not even hint at the content of the alleged "misrepresentations about material terms of the transaction...." Indeed, the part of the complaint that comes closest to alleging a particular fraudulent statement indicates that the "defendants ... falsely and fraudulently represented that they had possession of certain rare coins which were in fact owned by another person or entity." Complaint ¶ 7. To the extent that it is intelligible, this statement seems to indicate that the defendants told the plaintiffs that they possessed certain coins of which they were not the owners. The distinction between ownership and possession, however, is fundamental, and it is hardly clear that a representation about one entails a fraudulent statement about the other.

Similarly, as to the fourth cause of action, the complaint simply realleges all earlier allegations and adds:

> [I]n furtherance of their efforts as alleged hereinabove, the defendants utilized the telephones and mails across state lines, in violation of applicable federal, civil prohibitions....

Complaint ¶ 28. Thus, the fourth cause of action compounds the ambiguities of the first cause of action: It restates the same nebulous allegations but further contends that the fraudulent statements were made over the telephone and through the mail by an unspecified person at an unspecified time and from an unspecified place. From the standpoint of Rule 9(b), then, the allegations of the fourth cause of action are even more deficient than those of the first.

Indeed, the paragraphs of the complaint are so vague—so broad and indeterminate—that the court would probably grant a motion by the defendants for a more definite statement under Rule 12(a)(2) even if these causes of action did not allege fraud. As the complaint stands, however, the plaintiffs have simply failed to state "the circumstances constituting fraud ... with particularity." For this reason, the court must dismiss the first and the fourth causes of action.

### 2. *Rule 12(b)(6)*

■ Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed on motion for "failure to state a claim upon which relief can be granted." When a court rules on such a motion, it "is required to accept the material facts alleged in the complaint as true...." *Easton v. Sundram*, 947 F.2d 1011 (2d Cir. 1991). The question to be answered is whether or not the complaint sets forth a legally cognizable claim. Hence:

> [The court may not dismiss an action under Rule 12(b)(6) ] "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see*

*also Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991).

*Easton,* 947 F.2d at 1015. Thus, this court must take as true the facts alleged by the plaintiffs and must determine whether the causes of action set out in the complaint constitute claims on which relief could be granted.

The first cause of action is, as discussed above, a claim of fraud. However, on this cause of action, the plaintiffs do not allege—as one might expect—that they were sent coins of value less than that represented by the defendants. Rather, the plaintiffs claim that the fraud of the defendants caused the plaintiffs to incur substantial expenses in connection with an arbitration proceeding initiated by the defendants:

> [P]laintiffs in fact relied upon such statements to their financial detriment, in that, among other things, as a result of the fraudulent nature of the subject transaction, plaintiffs were compelled to expend great sums of money in defending against defendants' arbitrations requests through the Professional Numismatists Guild, Inc. ("PNG"); plaintiffs were compelled to undertake *successful* court proceedings to seek a stay of such arbitration; and, upon information and belief, defendants are currently attempting to commence litigation against plaintiffs in their home state of Florida for the sole purpose of causing plaintiffs to have to expend greater sums in the defense of that frivolous action.

Complaint ¶ 15. Thus, the plaintiffs do not appear to argue that they were directly defrauded by the defendants as to the value of the coins. Rather, they seem to argue that a misrepresentation by the defendants about the coins led to the plaintiffs becoming parties to an arbitration proceeding with the defendants. Apparently, the plaintiffs are now suing to recover the legal fees that they incurred in those proceedings. However, a claim for attorney's fees is not in itself an actionable claim. Rather, attorney's fees "are merely incidents of litigation and thus are not compensable in the absence of statutory authority for the provision of such." *City of Buffalo v. J.W. Clement Company, Inc.,* 28 N.Y.2d

241, 262–63, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971) (citations omitted).

In this case, the plaintiffs have not suggested any "statutory authority" that entitles them to maintain this first cause of action. The plaintiffs meekly refer the court to New York Civil Practice Law and Rules Section 8303-a, but that provision simply authorizes a court to grant an award of attorney's fees in certain tort actions. Section 8303-a does not, however, create a right of action. In this respect, the plaintiffs here stand in a posture very much like that of the defendant in *Raymond Corp. v. Coopers & Lybrand*, 105 A.D.2d 926, 482 N.Y.S.2d 377 (App.Div.3d Dept.1984). There, the defendant counterclaimed for fraud against the plaintiff, but the damages it sought were nothing more than the costs incurred by the defendant in defending against the plaintiff's suit. The court observed that "a necessary element to any cause of action for fraud and misrepresentation is damages, and such damages must be pleaded." *Raymond Corp.*, 105 A.D.2d at 927, 482 N.Y.S.2d 377 (citations omitted). However, "[d]amages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages...." *Id.* Hence, the plaintiffs here, like the defendant in *Raymond Corp.*, have not adequately pleaded the damages element of their fraud claim. Indeed, on their fourth claim for relief, the plaintiffs have not pleaded damages at all. For this reason, they have failed to state a claim on which relief may be granted, and the court must dismiss the plaintiffs' first and fourth causes of action.

██ For a second cause of action, the plaintiffs allege abuse of process by the defendants:

[D]efendants have undertaken arbitration and court proceedings in bad faith, frivolous and harassing efforts against the plaintiffs to seek a recovery of the subject coins, as more particularly described hereinabove.

[D]efendants have caused various court or arbitration processes to issue against plaintiffs, all groundlessly, which pro-cesses have required the time, attention and resources of plaintiffs to respond to.

[T]he foregoing constitutes an abuse of process by defendants, which abuse of process has resulted to damages to the plaintiffs in the approximate amount of $50,000.

Complaint ¶¶ 20–22. Again, the plaintiffs have failed to state a claim on which relief may be granted. The tort of abuse of process has three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984) (citation omitted). However, the "process" so abused in the tort must involve "an unlawful interference with one's person or property." *Williams v. Williams*, 23 N.Y.2d 592, 596, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969). Such "interference" may be an arrest, an attachment, or a provisional remedy of similar nature; however, the initiation of civil proceedings is "not legally considered process capable of being abused." *Curiano*, 63 N.Y.2d at 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324. In this case, however, the plaintiffs have alleged no "unlawful interference" with their persons or property; indeed, the complaint is quite clear that the plaintiffs seek redress for the defendants having "undertaken" arbitration proceedings. But, under *Curiano*, this is legally insufficient to state a cause of action for abuse of process. For this reason, the second cause of action must be dismissed.

██ Finally, the third cause of action alleges that "the foregoing efforts and attempts by defendants constitute harassment and invasion of the privacy of the plaintiffs by defendants." Complaint ¶ 24. The plaintiffs seek $1,000,000.00 in punitive damages on this claim. However, it is clear that the first part of the third cause of action—the claim of harassment—is nothing more than a restatement of the abuse-of-process claim in the second cause of action. As such, it must be dismissed. The second part of the third cause of ac-

**18**

tion—the invasion of privacy claim—is equally without merit. The cause of action for invasion of privacy is statutory under New York Law, and the plaintiffs have failed to make even a colorable claim under the applicable provisions. See New York Civil Rights Law Section 50 (use of image or name of person in advertising), Section 50-a (personnel records of certain public employees), and Section 50-b (victims of sex offenses). Indeed, the plaintiffs do not appear to contest in their opposition papers that the third cause of action should be dismissed in its entirety.

## CONCLUSION

The court hereby dismisses the first and the fourth causes of action for failure to plead fraud with particularity; the court also dismisses all four causes of action for failure to state claims on which relief may be granted.

SO ORDERED.