979 So.2d 988 (2008)
Brian RUBIN, Appellant,
v.
Dr. Richard GABAY, Appellee.
No. 4D06-5060.
District Court of Appeal of Florida, Fourth District.
February 13, 2008.
*989 Robert C. Stone of Law Office of Robert C. Stone, P.A., Boca Raton, for appellant.
Mark C. Perry of Law Offices of Mark C. Perry, P.A., Fort Lauderdale, for appellee.
WARNER, J.
Brian Rubin appeals a final judgment finding him liable for securities fraud as an agent under section 517.211, Florida Statutes, and awarding both compensatory and treble damages. Because there was no evidence to support liability under section 517.211, we reverse.
Appellee/plaintiff, Dr. Richard Gabay, expressed an interest to his stockbroker, appellant/defendant Rubin, in purchasing initial public offering securities ("IPOs"). Because Rubin's brokerage firm did not have any IPOs, he referred Gabay to Terry Feibus, a stockbroker at another firm who did this type of investing. Subsequently, Gabay purchased pre-IPO stock *990 from Feibus and his brokerage firm based on Feibus's recommendations and representations that the companies were operational and on the verge of going public. Rubin was not involved in those transactions as a broker.
Unfortunately, the pre-IPO corporations turned out to be shams, and Gabay lost his investments. Gabay then sued both Feibus and Rubin for his losses, alleging numerous causes of action including securities fraud under chapter 517, Florida Statutes.
After a non-jury trial during which only Gabay testified and Feibus's deposition was introduced, the trial court found that Rubin aided and abetted a fraud by referring Gabay to Feibus, giving reassurances, and receiving a referral fee. The court held Rubin jointly and severally liable with Feibus for $3,225,000, representing the purchase price of the stock and treble damages. Rubin appeals.
Section 517.301, Florida Statutes, makes it unlawful to employ certain false representations, schemes, or fraudulent artifices in rendering investment advice or in offering, selling, or purchasing investment securities or products. Section 517.211(2) imposes individual liability on:
[a]ny person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase. . . .
As Rubin fit no other category, Gabay had to prove that Rubin was an agent within the meaning of section 517.211(2) to hold him liable for the false representations regarding the pre-IPO purchases.
In discussing the meaning of the term agent in the context of section 517.301, this court explained that the term is to be given its common definition, meaning representation of a principal. Arthur Young & Co. v. Mariner Corp., 630 So.2d 1199, 1204-05 (Fla. 4th DCA 1994). "[T]he context of the use of the word agent is to make liable all those representatives and direct participants in the sale of the security who commit fraud as a means of inducing the purchaser to buy." Id. at 1203.
The existence of an agency relationship is usually a question of fact that must be resolved by the fact-finder. Fernandez v. Fla. Nat'l College, Inc., 925 So.2d 1096, 1100 (Fla. 3d DCA 2006). However, when a party bearing the burden of proof fails to produce any supportive evidence, or when the evidence presented by both parties is so unequivocal that reasonable persons could reach but one conclusion, a question that is ordinarily one of fact becomes a question of law to be determined by the court. Id.
To establish an actual agency relationship, the following elements must be established: "(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." State v. Am. Tobacco Co., 707 So.2d 851, 854 (Fla. 4th DCA 1998).
To establish that an apparent agency exists, the following elements must be present: "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation." Blunt v. Tripp Scott, P.A., 962 So.2d 987, 989 (Fla. 4th DCA 2007) (quoting Lensa Corp. v. Poinciana Gardens Ass'n, 765 So.2d 296, 298 (Fla. 4th DCA 2000)).
Here, neither actual nor apparent agency was established. There was no evidence that Rubin participated in the *991 sale of the stock. By Gabay's own admission, Feibus recommended and made representations concerning the corporations, and Gabay purchased the stock from Feibus and his brokerage firm. Gabay admitted that Rubin was not involved in these transactions as a broker. No representation was made by Feibus or any seller that Rubin acted for them, nor did Rubin indicate that he was involved or acting for the sellers. Gabay never testified that Rubin was acting for him in these transactions, as all of the purchases were made through Feibus. Although Rubin gave Gabay assurances with respect to the public offering process, they were made after the purchase of the stock. Thus, the reassurances cannot serve as a basis for a finding that he participated or aided in the sale of the stock. While Feibus paid Rubin a referral fee with respect to the transaction of one stock, that evidence is insufficient to establish that Rubin was acting as an agent for the seller of the stocks.
The trial court found that Rubin aided and abetted the fraud. Not only was the liability of Rubin not proven under the statute, a common law count of aiding and abetting was never pled.
Because Gabay failed to prove liability of Rubin under section 517.211(2), we reverse the final judgment and remand to enter final judgment in favor of Rubin.
FARMER, J., and CONNER, BURTON C., Associate Judge, concur.