Pasha S. ANWAR, et al., Plaintiffs,

v.

FAIRFIELD GREENWICH LIMITED,
et al., Defendants.

Nos. 09 Civ. 0118 (VM), 10 Civ. 6186,
10 Civ. 6187, 10 Civ. 8272.

United States District Court,
S.D. New York.

Nov. 2, 2011.

Christopher Lovell, Victor E. Stewart, Jody Krisiloff, Hillary Sobel, Jeffrey Charles Zwerling, Robert S. Schachter, Stephanie Elizabeth Kirwan, Stephen Leland Brodsky, Richard A. Speirs, New York, NY, Adam S. Deckinger, Eli Justin Glasser, Jonathan Edgar Pollard, Sashi Bach Boruchow, Stuart Harold Singer, Susan E. Klock, Boies, Schiller & Flexner LLP, Fort Lauderdale, FL, David A. Barrett, Boies, Schiller & Flexner, LLP, New York, NY, David J. Molton, Martin S. Siegel, Brown Rudnick LLP, New York, NY, Paul Edouard Dans, Rivero Mestre & Castro, Coral Gables, FL, David Alan Rothstein, Jeffrey Brett Kaplan, Lorenz Michel Pruss, Dimond Kaplan & Rothstein PA,

Coconut Grove, FL, Jeffrey F. D. Bogert, Bogert & Rembold, P.L., Coral Gables, FL, Robert E. Linkin, Dimond Kaplan & Rothstein, PA, Miami, FL, Richard E. Brodsky, The Brodsky Law Firm, Miami, FL, Laurence Edward Curran, III, Curran & Associates, Coral Gables, FL, Joseph Emanuel Neuhaus, Sullivan and Cromwell, LLP, New York, NY, Michael Jules Aguirre, San Diego, CA, Brandon R. Levitt, Kachroo Legal Services, P.C., New York, NY, Gaytri D. Kachroo, K&L Gates, Newark, NJ, John H. Ray, III, K&L Gates, Washington, DC, for Plaintiffs.

Mark Geoffrey Cunha, Michael Joseph Chepiga, Paige Elizabeth Fleming, Paul Jacob Sirkis, Peter Eric Kazanoff, Philip A. Mirrer-Singer, Sara Ann Ricciardi, Simpson Thacher & Bartlett LLP, New York, NY, Glenn Kurtz, White & Case LLP, New York, NY, Andrew J. Levander, David Scott Hoffner, Dechert, LLP, New York, NY, Jennie Boehm Krasner, Dechert, LLP, Princeton, NJ, Adam K. Grant, Daniel R. Benson, Daniel J. Fetterman, Marc E. Kasowitz, Kasowitz, Benson, Torres & Friedman, LLP, New York, NY, Helen Virginia Cantwell, Mark P. Goodman, Debevoise & Plimpton, LLP, New York, NY, Amanda McGovern, Dyanne Eyce Feinberg, Elizabeth A. Izquierdo, Terence Michael Mullen, Gilbride Heller & Brown P.A., Miami, FL, Eliot Lauer, Curtis, Mallet-Prevost, Colt & Mosle, LLP, New York, NY, Andrew M. Genser, Kirkland & Ellis LLP, New York, NY, Amy E. Crawford, Brenton Rogers, Emily Nicklin, Timothy A. Duffy, Kirkland & Ellis LLP, Chicago, IL, Gabrielle Sean Marshall, Sarah Loomis Cave, William R. Maguire, Hughes Hubbard & Reed LLP, New York, NY, Ricardo Alejandro Gonzalez, Greenberg Traurig, P.A., Miami, FL, Stephen Lee Weinstein, Eiseman, Levine, Lehrhaupt & Kakoyiannis, P.C., New York, NY, Joseph Clay Coates, III, Jon Andrew Jacobson, Lauren Whetstone, Greenberg Traurig, West Palm Beach, FL, Edward M. Spiro, Robert James Anello, Claudio Godinez RoumainOchoa, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

This matter arises from three separately-filed actions, each chiefly alleging that defendant Standard Chartered Bank International (Americas) Ltd. ("SCBI") committed a number of wrongful acts under Florida state law against four foreign individuals ("Plaintiffs") involving investments in Fairfield Sentry Ltd. ("Fairfield Sentry"), a feeder fund that in turn invested in Bernard L. Madoff Investment Securities ("BLMIS"), a now-infamous Ponzi scheme Pursuant to the Order of the Judicial Panel on Multidistrict Litigation issued in MDL No. 2088 (the "MDL"), this case has been consolidated into a number of other lawsuits concerning the fallout from alleged wrongdoing by BLMIS.

On March 10, 2010, SCBI and its corporate affiliates ("Defendants") filed a unified motion to dismiss four other actions brought by a different group of plaintiffs (the "SCBI–Anwar Plaintiffs") and also transferred to this Court as part of the MDL. The Court granted in part and denied in part that motion on October 4, 2010 (the "SCBI–Anwar Order"). *See Anwar v. Fairfield Greenwich Ltd.*, 745 F.Supp.2d 360 (S.D.N.Y.2010). Defendants now move (the "Motion") to dismiss the complaints of Plaintiffs under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and 9(b) ("Rule 9(b)"). For the reasons listed below, the Court GRANTS in part and DENIES in part the Motion.

## I. BACKGROUND

Plaintiffs in these cases have filed three complaints: (1) Ricardo Almiron ("Almi-

ron"), a resident and citizen of Mexico, filed a complaint on February 19, 2010 ("Almiron Complaint"); (2) Carlos Carrillo ("Carrillo"), a resident and Citizen of Mexico, filed a complaint on February 19, 2010 ("Carrillo Complaint"); and (3) Moises Lou–Martinez and Wong Yuk Hing De Lou (together, the "Lous"), residents of Panama, filed a First Amended Complaint on October 19, 2010 ("Lou Complaint," together with the Almiron Complaint and Carrillo Complaint, "Complaints"). Unless otherwise noted, the factual recitation below is drawn conclusively from the Complaints. The Almiron and Carrillo Complaints are nearly identical. The Lou Complaint, however, alleges an entirely different theory of liability. These differences will, where pertinent, be explained below.

In July of 2006, Almiron opened an account at American Express Bank International ("AEBI"). Several months later, in November of 2006, Carrillo also opened an account with AEBI. AEBI was eventually acquired by SCBI in February of 2008.[1] Between September and December of 2008, Almiron and Carrillo, upon SCBI's recommendation, invested $350,000 and $100,000, respectively, in Fairfield Sentry. Almiron and Carrillo contend that SCBI recommended these investments without having conducted any investigation into the Fairfield Sentry investment opportunity.

The money invested in Fairfield Sentry was invested via a moneymaking scheme known as the "split-strike conversion" method. Almiron and Carrillo allege an array of "red flags" that should have alerted SCBI to certain infirmities in Fairfield Sentry. Such warning signs included: the impossibility of BLMIS and Bernard Madoff's ("Madoff") high returns; Fairfield

Sentry's failure to perform audits of BLMIS; and that other financial firms refused to invest with Madoff. To challenge SCBI's making investment recommendations despite these red flags, Almiron and Carrillo bring a number of Florida statutory and common-law claims similar to claims asserted in the other cases against SCBI considered by this Court in the SCBI–Anwar Order.

In January of 1998, the Lous opened an account with AEBI. Unlike Almiron and Carrillo, the Lous allege that in September of 2005, Defendants misappropriated $500,000 from their account by investing in Fairfield Sentry without their authorization. It was not until January of 2009 that the Lous first discovered the 2005 investment in Fairfield Sentry.

As a preliminary matter, the Court notes that the Lous have abandoned a number of claims and dismissed defendants named in the Lou Complaint. In particular, by stipulation dated August 30, 2011 (Docket No. 717), the Lous voluntarily dismissed Count One (Conversion) with prejudice, Count Two (Breach of Fiduciary Duty for Unauthorized Investment) without prejudice, and defendant StanChart Securities International. The Lous have also failed to respond to Defendants' arguments in support of dismissing their claims against defendant Standard Chartered PLC and their claims for fraud (Count Four) and unjust enrichment (Count Six). Accordingly, the Court considers these claims abandoned. *See, e.g., Burchette v. Abercrombie & Fitch Stores Inc.*, No. 08 Civ. 8786, 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (dismissing claims where plaintiff failed to address or oppose arguments made in defendant's motion to dis-

---

1. For a review of Defendants' corporate structure and analysis of the Court's subject matter jurisdiction over these actions, see *Anwar*, 745 F.Supp.2d at 364.

miss); *Lipton v. Cnty. of Orange,* 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) (same).

The remaining causes of action in the Complaints break down as follows:

- Almiron and Carrillo allege violations of the Florida Securities and Investor Protection Act, section 517.301 ("§ 517.301") of the Florida statutes; breach of fiduciary duty; negligence; negligent misrepresentation; and unjust enrichment and constructive trust against SCBI.
- The Lous allege breach of fiduciary duty and gross negligence against SCBI.

## II. DISCUSSION

### A. LEGAL STANDARD

#### 1. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint

as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

#### 2. Rule 9(b)

Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Particularity requires "that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004) (quotation marks omitted).

### B. CHOICE OF LAW

▮ As noted, these cases are before the Court pursuant to an order of the Judicial Panel on Multidistrict Litigation. In such cases, "a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit." *Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir.1993); *see also Desiano v. Warner–Lambert,* 467 F.3d 85, 91 (2d Cir.2006). Accordingly, the Court will apply Second Circuit case law to the federal issues in this case. All three complaints were originally filed in Florida, where SCBI is located, and the parties are in agreement that Florida law applies to their state claims.

### C. FRAUD CLAIMS UNDER § 517.301

#### 1. Legal Standard

Almiron and Carrillo each assert that SCBI violated § 517.301 of the Florida statutes. Section 517.301 makes it unlawful for any person "in connection with the offer, sale, or purchase of any investment or security":

1. To employ any device, scheme, or artifice to defraud;

2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

Fla. Stat. § 517.301(1)(a).

To state a claim under § 517.301, a plaintiff must allege: (1) a misrepresentation or omission of material fact; (2) that this misrepresentation or omission was justifiably relied on; and (3) scienter. *See Durden v. Citicorp Trust Bank, FSB*, No. 3:07 civ. 974–J–34, 2009 WL 6499365, at *5 (M.D.Fla. Aug. 21, 2009). The elements of a cause of action under § 517.301 are identical to those under § 10(b) of the Securities Exchange Act of 1934 ("Securities Act"), except that the scienter requirement under Florida law is satisfied by a showing of negligence. *See Grippo v. Perazzo*, 357 F.3d 1218, 1222 (11th Cir.2004).

In light of the Court's prior rulings and upon review of the record and the parties' submissions, the Court finds that Almiron and Carrillo have satisfied the elements set forth in *Durden*. However, because Almiron and Carrillo's claims under § 517.301 are based on fraud, the Court must assess whether they plead facts with sufficient particularity to satisfy Rule 9(b). *See Great Fla. Bank v. Countrywide Home Loans, Inc.*, No. 10 Civ. 22124, 2011 WL 382588, at *3 (S.D.Fla. Feb. 3, 2011).

Finally, § 517.301 does not create a private right of action. It operates, however, in conjunction with § 517.211 of the Florida statutes ("§ 517.211"), which contains an express provision for civil liability in certain circumstances. *See E.F. Hutton & Co., Inc. v. Rousseff*, 537 So.2d 978, 980–81 (Fla.1989). Accordingly, a plaintiff asserting a claim under § 517.301 must also establish that the defendant falls within the class of individuals identified in § 517.211.

2. *Sufficiency of § 517.301 Claims under Rule 9(b)*

SCBI argues that Almiron and Carrillo's § 517.301 claims are insufficient because they have failed to allege particularized facts concerning the alleged misrepresentations or omissions. Almiron and Carrillo have not listed the specific misrepresentations or omissions that support their causes of action under § 517.301. Rather, they allege that the misleading statements are "set forth above" without further identification of those statements. (Almiron Compl. ¶ 67; Carrillo Compl. ¶ 69.) Almiron and Carrillo fail to explicitly list the alleged misrepresentations and omissions comprising their § 517.301 claims, which conceivably runs afoul of Rule 9(b). *See Henneberry v. Sumitomo Corp. of Am.*, 532 F.Supp.2d 523, 541 n. 9 (S.D.N.Y. 2007). In any event, after reviewing the entirety of Almiron and Carrillo's submissions, accepting the factual pleadings as true and reading the complaints in the light most favorable to them, the Court construes the following alleged misrepresentations or omissions as comprising the substance of their § 517.3 01 claims:

● SCBI misrepresented that Fairfield Sentry was a safe, low-risk investment with steady returns;

● SCBI misrepresented that it performed extensive due diligence on Fairfield Sentry before SCBI recommended it to Plaintiffs;

- The Private Placement Memorandums issued by Fairfield Sentry and distributed by SCBI were misleading and falsely stated that an "affiliated investment manager" of Fairfield Sentry was managing the assets, and failed to disclose the identity of BLMIS, a third-party unknown to Plaintiffs; and

- SCBI did not disclose that BLMIS—and, therefore, Madoff—was managing the assets of Fairfield Sentry.

a. *Misrepresentations and Omissions under Rule 9(b)*

The Court finds that Almiron and Carrillo's claims premised on the riskiness of Fairfield Sentry and the amount of diligence Fairfield Sentry performed fail under Rule 9(b) and must be rejected. Almiron and Carrillo do not adequately allege the context of each alleged misrepresentation with sufficient particularity. They do not allege where the misstatements were made, and only once do they allege an approximate time frame when a certain misrepresentation occurred. *See Rombach*, 355 F.3d at 170; *Jeff Isaac Rare Coins, Inc. v. Yaffe*, 792 F.Supp. 13, 15 (E.D.N.Y.1992) (dismissing pursuant to Rule 9(b) complaint alleging misstatement occurred "in early January of 1991"). (*See also* Almiron Compl. ¶ 29; Carrillo Compl. ¶ 30.) These allegations do not provide SCBI with fair notice of the claims asserted against it. *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F.Supp.2d 282, 293 (S.D.N.Y.2000) ("Allegations of fraud must be pled with sufficient particularity to . . . to provide a defendant with fair notice of the claims against it."). The Court must read the Almiron and Carrillo Complaints in the light most favorable to them; it cannot, however, rewrite them to supply details essential to satisfy Rule 9(b).

The Court now turns to the allegations related to SCBI's failure to disclose that Fairfield Sentry was structured to funnel investment monies to Madoff. In assessing whether an alleged omission withstands scrutiny under Rule 9(b), a complaint must allege "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *See Odyssey*, 85 F.Supp.2d at 293.

This Court has previously ruled that claims based on similar alleged omissions made by SCBI related to Fairfield Sentry satisfied Rule 9(b). *See Anwar*, 745 F.Supp.2d at 372–73. There, the Court found that the Maridom Plaintiffs[2] had satisfied the *Odyssey* factors by alleging that SCBI's failure to disclose Fairfield Sentry's association with Madoff induced plaintiff to make the investment and, in turn, SCBI received a fee for securing that investment. (*See id.*) Although the Maridom Plaintiffs did not specify which employees failed to disclose the information involving the structure of Fairfield Sentry, their claims survived because SCBI "should know which of their agents interacted" with the Maridom Plaintiffs, thus satisfying the objectives of Rule 9(b) related to fair notice. (*Id.*)

The question of sufficient particularity is not as clear-cut as it relates to Almiron and Carrillo. Unlike the Maridom Plaintiffs, Almiron and Carrillo have not alleged with specificity the fourth element set forth in *Odyssey*, namely what SCBI obtained through the fraud. Almi-

---

**2.** The Maridom Plaintiffs are defined in the SCBI–Anwar Order as Maridom Ltd., Caribetrans, S.A. and Abbot Capital, Inc., all corporations organized outside the United States. *See Anwar*, 745 F.Supp.2d at 363.

ron and Carrillo allege that "[u]pon information and belief," SCBI charged an annual fee to clients investing in Fairfield Sentry, but "[a]t this time it is unknown whether [Almiron and Carrillo were] charged this fee." (Almiron Compl. ¶ 34; Carrillo Compl. ¶ 36.) Failure to specifically plead facts regarding fees with the requisite particularity undermines Almiron and Carrillo's theory of liability because they have not demonstrated what SCBI obtained through the fraud. *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100–01 (S.D.N.Y.1997) ("Because Rule 9(b) requires a Plaintiff to go on the record as to the specific nature of the fraud, allegations of fraud may not be based upon information and belief." (internal citations and quotation marks omitted)).

b. *Scienter under Rule 9(b)*

Rule 9(b) also requires a plaintiff to plead with particularity facts giving rise to a strong inference that a defendant acted with the requisite state of mind. Such particularity is required even for claims based on mere negligence, as is the case here. *See, e.g., Rombach*, 355 F.3d at 171 ("[W]hile a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2) [of the Securities Act], claims that … rely upon averments of fraud are subject to the test of Rule 9(b)."); *Bondi v. Bank of America Corp. (In re Parmalat Secs. Litig.)*, 479 F.Supp.2d 332, 339 n. 30 (S.D.N.Y.2007) (negligent misrepresentation claim sounds in fraud and is subject to Rule 9(b)). To satisfy this requirement, a plaintiff may allege: (a) facts showing that defendants had "both motive and opportunity to commit fraud," or (b) facts "constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (*quoting Shields v. Citytrust Ban-*

*corp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Almiron and Carrillo fail to plead allegations suggesting that SCBI had a motive to commit fraud. Even if the Court were to infer that SCBI was motivated by the collection of "commissions and administrative, management and other fees" (Almiron Compl. ¶ 100; Carrillo Compl. ¶ 101.), Almiron and Carrillo's other allegations that they are unaware as to whether they were actually charged fees contradict such a theory. Furthermore, generalized motives, such as the collection of fees, "which could be imputed to almost any bank, are not sufficiently concrete for purposes of inferring fraudulent intent." *Schmidt v. Fleet Bank*, Nos. 96 Civ. 5030, 96 Civ. 7836, 96 Civ. 9705, 96 Civ. 9706, 1998 WL 47827, at *6 (S.D.N.Y. Feb. 4, 1998) (citing cases); *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F.Supp.2d 137, 143 (S.D.N.Y.2010) ("[T]o allege motive under Rule 9(b), a plaintiff must show a benefit to the defendant going beyond the receipt of normal compensation for professional services rendered." (internal citations and quotation marks omitted). In *MLSMK*, a recent decision that dealt with facts similar to the case at hand, the court rejected plaintiff's theory that defendants were motivated to participate in Madoff's fraud because they received fees in connection with services to BLMIS. *See* 737 F.Supp.2d at 143.

Almiron and Carrillo also fail to plead facts that establish strong circumstantial evidence that SCBI acted with conscious misbehavior or recklessness. Their conclusory allegations that SCBI acted knowingly or recklessly do not give rise to a strong inference of fraudulent intent. (*See* Almiron Compl. ¶¶ 63, 65, 77; Carrillo Compl. ¶¶ 65, 67, 79.) Even at the motion to dismiss stage, "parties must present at least a minimal factual basis for

their allegations of scienter." *Jeanette Coquette Co. v. Hartford Fire Ins. Co.*, No. 93 Civ. 4418, 1995 WL 363864, at *3 (S.D.N.Y. June 19, 1995).

In the SCBI–Anwar Order, the Court found that the Maridom Complaint [3] satisfied the scienter requirement for negligent misrepresentation because the plaintiffs explained the foundation for their allegations of actual knowledge or recklessness. In particular, the Maridom Plaintiffs alleged that "SCBI had actual knowledge or was severely reckless in not knowing that the modus operandi of [Fairfield Sentry] was simply to turn over funds to BLMIS" because "it was widely known in the investment circles in which SCBI operated that this was the case." (Maridom Complaint ¶ 59.) Here, Almiron and Carrillo do not allege facts demonstrating the basis for their allegations regarding SCBI's scienter. Furthermore, as the Court previously held, allegations of fraud premised on SCBI's recommendation to invest in Fairfield Sentry without conducting due diligence are insufficient to support a strong inference of scienter. *See Anwar*, 745 F.Supp.2d at 371.

Accordingly, Almiron and Carrillo's claims under § 517.301 must be dismissed because they are insufficiently pled under Rule 9(b).

### 3. *Liability under § 517.211*

■■■ Independently, Almiron and Carrillo's claims also fail because they have not alleged facts sufficient to show that SCBI falls within the class of entities or individuals identified in § 517.211, and that Almiron and Carrillo are therefore entitled to bring an action under § 517.301. Section 517.211 provides that:

> Any person purchasing or selling a security in violation of [§ 517.301], and every ... agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Fla. Stat. § 517.211. "[F]or the remedies of [s]ection 517.211(2) to apply to a violation of 517.301, buyer/seller privity is required." *Rushing v. Wells Fargo Bank, N.A.*, 752 F.Supp.2d 1254, 1260 (M.D.Fla. 2010) (*citing E.F. Hutton*, 537 So.2d at 981). A plaintiff may recover under § 517.211 if he shows that defendant is either the seller of the securities or the "agent of such a seller who has solicited the sale of the securities on his own behalf or on behalf of the seller." *In re Sahlen & Assocs. Secs. Litig.*, 773 F.Supp. 342, 372 (S.D.Fla.1991).

SCBI argues that because Almiron and Carrillo have not alleged that SCBI was the seller of Fairfield Sentry securities or that it was the agent of the seller, buyer/seller privity is absent. In response, Almiron and Carrillo argue that a broker serving as agent for an investor in the purchase of securities is an individual who can be held liable for violations of § 517.211. (*See* Plaintiffs Carrillo's and Almiron's Response in Opposition to Standard Chartered's Motion to Dismiss at 13 (*citing Rubin v. Gabay*, 979 So.2d 988, 990 (Fla. 4th Dist.Ct.App.2008); *First Union Disc. Brokerage Servs., Inc. v. Milos*, 744 F.Supp. 1145, 1155 (S.D.Fla.1990)).) Both of the cases cited by Almiron and Carrillo are unpersuasive.

---

**3.** *See Maridom Limited et al. v. Standard Chartered Bank International (Americas) Limited,* 10 Civ. 0920 (S.D.N.Y), Docket No. 8 (consolidated with 09 Civ. 0118).

■ In *Rubin,* the Court never reached the issue of whether buyer/seller privity was required under § 517.211 because it found that plaintiffs did not even demonstrate actual or apparent agency with its broker. *See* 979 So.2d at 990–91. Although *Milos* holds that a broker could be liable to an investor under § 517.211, this case was decided before *E.F. Hutton. See* 744 F.Supp. at 1155. *E.F. Hutton* unequivocally states that "buyer/seller privity is required." *E.F. Hutton,* 537 So.2d at 981. Neither Almiron nor Carrillo allege who sold them the Fairfield Sentry securities or whether that seller had an agency relationship with SCBI. Contrary to Almiron and Carrillo's contentions, it is insufficient to allege that they held accounts at SCBI enabling them to purchase and sell securities. (*See* Almiron Compl. ¶ 25; Carrillo Compl. ¶ 25.) At best, the Court can infer from Almiron and Carrillo's allegations that SCBI acted as an intermediary in the acquisition of Fairfield Sentry securities. That does not show buyer/seller privity. Accordingly, the Court finds that Almiron and Carrillo have failed to fulfill the requirements of § 517.211, and thus their claims under § 517.301 are dismissed.[4]

## D. *NEGLIGENT MISREPRESENTATION*

■ Almiron and Carrillo each allege negligent misrepresentation against SCBI.

To plead negligent misrepresentation under Florida law, a plaintiff must allege:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

*Romo v. Amedex Ins. Co.,* 930 So.2d 643, 653 (Fla.3d Dist.Ct.App.2006).

■ Under Florida law, a negligent misrepresentation claim requires demonstrating the same elements as a fraud claim, except that the tortfeasor need not have actual knowledge that the statement was a misrepresentation. *See Jaffe v. Bank of Am., N.A.,* 667 F.Supp.2d 1299, 1320 (S.D.Fl.2009). The same elements effectively apply to claims of negligent misrepresentation as apply to claims under § 517.301. *See id.* (negligent misrepresentation; *Compania de Elaborados de Cafe v. Cardinal Cap. Mgmt., Inc.,* 401 F.Supp.2d 1270, 1280 (S.D.Fla.2003) (§ 517.301)). Furthermore, as with claims alleged under § 517.301, courts in the Eleventh Circuit have held that "Rule 9(b)'s pleading requirements apply to ac-

---

**4.** The Court also notes that Almiron and Carrillo fail to allege that the purchase/sale of Fairfield Sentry occurred in Florida. This too is fatal to their claims under § 517.301. *See Allen v. Oakbrook Sec. Corp.,* 763 So.2d 1099, 1101 (Fla. 4th Dist.Ct.App.1999) (finding that claims alleged under § 517.301 where securities sales occurred entirely in states other than Florida must be dismissed for failure to state a claim). Almiron and Carrillo's allegations that their investment accounts were located in Florida, without more, is insufficient to establish their claims under § 517.301. *See, e.g., Jenkins v. Last Atlantis Partners,* No. 09 Civ. 3581, 2010 WL 3023490, at *5 (N.D.Ill. July 30, 2010) (interpreting Florida law) (allegation that plaintiff is a resident of Florida is not enough to show a connection with sale of security in Florida under § 517.301). *But see LaDuca v. Swirsky,* No. 02 Civ. 8597, 2003 WL 23162437, at *5 (N.D.Ill. Jul. 24, 2003) (interpreting Florida law) (allegations that "[p]ledge was signed in Florida, it was foreclosed in Florida, and that stock certificate that was the subject of the [p]ledge was located in Florida" sufficient to withstand motion to dismiss related to § 517.301 claim).

tions involving claims for negligent misrepresentation" under Florida law because such actions sound in fraud. *Johnson v. Amerus Life Ins. Co.,* No. 05 civ. 61363, 2006 WL 3826774, at *4 (S.D.Fla. Dec. 27, 2006).

Because Almiron and Carrillo's negligent misrepresentation claims are essentially identical to their fraud claims under § 517.301, Rule 9(b) requires dismissal for the reasons discussed above in the context of Almiron and Carrillo's statutory claims.

### E. BREACH OF FIDUCIARY DUTY AND GROSS NEGLIGENCE

 Each of the Plaintiffs alleges breach of fiduciary duty claims. Under Florida law, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla.2002). In Florida, a fiduciary relationship arises where:

> [A] relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial.

*Doe v. Evans,* 814 So.2d 370, 374 (Fla. 2002) (emphasis removed). Such "[a] fiduciary relationship may be implied by law" and its formation depends heavily "upon the specific factual situation surrounding the transaction and the relationship of the parties." *Id.* (quotation marks omitted). Florida has also adopted § 874 of the Restatement (Second) of Torts, which provides that a breach of a fiduciary relationship " 'is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.' " *Id. (quoting*

Restatement (Second) of Torts § 874 cmt. b (1979)). In short, "[t]he term 'fiduciary or confidential relation' is a very broad one. It exists ... in all cases in which influence has been acquired and abused, and in which confidence has been reposed and betrayed." *Atlantic Nat'l Bank of Fla. v. Vest,* 480 So.2d 1328, 1332 (Fla.2d Dist.Ct.App.1985).

Plaintiffs' claims for breach of fiduciary duty are based on two separate theories: (1) that SCBI failed to conduct due diligence prior to recommending Fairfield Sentry and (2) that SCBI failed to monitor Plaintiffs' investments in Fairfield Sentry.

#### 1. Duty to Conduct Due Diligence

##### a. The Almiron and Carrillo Complaints

 In the SCBI–Anwar Order, the Court found sufficient allegations that SCBI breached its fiduciary duty in failing to perform due diligence before recommending Fairfield Sentry to its customers. *See Anwar,* 745 F.Supp.2d at 376. Almiron and Carrillo allege similar facts regarding due diligence to those previously analyzed by the Court. The SCBI–Anwar Plaintiffs alleged that (1) SCBI's recommendation that they invest in Fairfield Sentry without conducting proper due diligence constituted a' breach of fiduciary duty; (2) a high-ranking SCBI executive admitted that no diligence had actually been done on Fairfield Sentry; and (3) no due diligence had been performed with respect to Fairfield Sentry. (*See id.*) Here, Almiron and Carrillo make similar, if not identical, allegations. (*See* Almiron Compl. ¶ 35, 41, 58; Carrillo Compl. ¶ 37, 43, 60.)

It is undisputed that SCBI owed only a limited set of duties to Almiron and Carrillo because they held nondiscretionary accounts at SCBI—meaning that SCBI

needed authorization prior to making investments on their behalf. *See Ward v. Atl. Sec. Bank,* 777 So.2d 1144, 1147 (Fla. Dist.Ct.App.2001) (describing duties owed by stockbroker to nondiscretionary account holder). However, as the Court previously held, "[e]ven nondiscretionary broker-dealers have a duty to recommend [investments] only after studying [them] sufficiently to become informed as to [their] nature, price, and financial prognosis, and [SCBI] had a duty to do the same before recommending Fairfield Sentry." (*Anwar,* 745 F.Supp.2d at 376. (*quoting Ward,* 777 So.2d at 1147) (internal citations and quotation marks omitted).)

SCBI argues, despite the Court's ruling, that Almiron and Carrillo's claims for breach of fiduciary duty should be dismissed because they do not plead a strong inference of scienter. According to SCBI, because Almiron and Carrillo each allege that SCBI's conduct in failing to perform due diligence "was so severely reckless as to be akin to fraud" (Almiron Compl. ¶ 77; Carrillo Compl. ¶ 79), those claims are subject to the heightened pleading standard under Rule 9(b).

To ensure consistency among the Court's rulings in this MDL, the Court must reject SCBI's contentions. In the SCBI–Anwar Order, the Court found that the Maridom Plaintiffs pled a cause of action for breach of fiduciary duty sufficient to defeat dismissal at this stage of the litigation. *See Anwar,* 745 F.Supp.2d at 376. In pleading breach of fiduciary duty, the Maridom Plaintiffs stated the same allegations as Almiron and Carrillo including the reference to "fraud." (*See* Maridom Compl. ¶ 49 ("On information and belief, SCBI's conduct was so severely reckless as to be akin to fraud, in that it never performed any due diligence, and, even if it did perform some due diligence, its efforts was grossly inadequate.").) Ac-

cordingly, the Court finds that Almiron and Carrillo have sufficiently stated causes action for breach of fiduciary duty.

#### b. *The Lou Complaint*

 The Lous also assert claims for breach of fiduciary duty and gross negligence based on the theory that SCBI failed to conduct proper due diligence in recommending Fairfield Sentry. In support of their claims, the Lous, like Almiron and Carrillo, rely on the Court's previous ruling in the SCBI–Anwar Order. Nonetheless, the Lous fail to address the substantially different factual premise of their complaint as compared to Almiron, Carrillo and the SCBI–Anwar Plaintiffs. The Lous even advertise these distinctions in their own complaint. (*See* Lou Compl. ¶ 5 ("The claims in this instance by the [Lous] are quite different from the other investor cases against these Defendants for losses due to investment in [Fairfield Sentry] . . . [because, here, the investment] by the Defendants on behalf of the [Lous] was made without any written or other authorization from the [Lous] to Defendants.").) The Lous, unlike Almiron and Carrillo, never allege that SCBI recommended that they invest in Fairfield Sentry or advised them as to the security because they allege that the investment was made without their prior authorization. The Lous allege that in 2005, SCBI, on their behalf, invested $500,000 in Fairfield Sentry. According to the Lous, the $500,000 was drawn from the investment account without their authorization. (*See* Lou Compl. ¶ 2.) It was not until January of 2009, when the Lous' son visited the offices of SCBI in Miami, Florida, that the Lous first learned of the 2005 investment in Fairfield Sentry. (*See id.* ¶¶ 22, 23, 29.) The Lous initially asserted claims for conversion and breach of fiduciary duty for unauthorized investment against SCBI, but those claims were later voluntarily dismissed. It therefore defies

logic to assume that SCBI breached its fiduciary duty or was grossly negligent in recommending Fairfield Sentry without conducting due diligence when the Lous have not even alleged that SCBI recommended the securities or advised them in the first place. Even if the Court were to assume that the Lous intended to plead their breach of fiduciary duty and gross negligence claims in the alternative, which they may, the claims still must be dismissed because such a claim is not supported by any factual allegations in the complaint.

### 2. Duty to Monitor the Fairfield Sentry Investments

#### a. The Almiron and Carrillo Complaints

 Almiron and Carrillo also allege that SCBI had a duty to continue to monitor their investments in the Fairfield Funds after they had been executed. SCBI again responds that such a duty applies only to discretionary accounts and that neither Almiron nor Carrillo had such accounts. *See de Kwiatkowski v. Bear*, 306 F.3d 1293, 1302 (2d Cir.2002) ("It is uncontested that a broker ordinarily has no duty to monitor a nondiscretionary account, or to give advice to such a customer on an ongoing basis."). However, in certain circumstances, when a broker undertakes a substantial and comprehensive advisory role with respect to nondiscretionary accounts, ongoing duties may be triggered, such as a duty to monitor. *Id.* at 1307.

In assessing certain of the SCBI–Anwar Plaintiffs' claims, the Court found that plaintiffs Headway Investment Corporation ("Headway") and Maria Akriby Valladolid ("Valladolid") adequately pled ongoing duties to monitor regardless of whether their accounts were discretionary or not. *See Anwar*, 745 F.Supp.2d at 377–78. Headway and Valladolid both alleged that SCBI was aggressive in marketing and recommending investments with Fairfield Sentry. Headway also alleged that over a period of one-and-a-half years several SCBI employees made continuous recommendations to invest in Fairfield Sentry that caused Headway to make five separate subsequent investments. (*See* Headway Compl. ¶¶ 39–46 (*Headway Investment Corporation v. American Express Bank Ltd. et al.*, 09 Civ. 21395 (S.D.N.Y.), Docket No. 1 (consolidated with 09 Civ. 0118)).)

Relying on the Court's rulings in the SCBI–Anwar Order, Almiron and Carrillo contend that they too have alleged facts sufficient to give rise to a duty to monitor. However, a review of the allegations in the Almiron and Carrillo Complaints suggest otherwise. Almiron and Carrillo's scant allegations that they relied on representations from SCBI and lacked the expertise to evaluate investment strategies are insufficient to show that SCBI played a substantial and comprehensive advisory role. (Almiron Compl. ¶¶ 32–33, 35; Carrillo Compl. ¶¶ 34–35, 37.) Unlike the much more extensive allegations made by Valladolid and Headway, there are no facts in Almiron and Carrillo's Complaints to suggest that SCBI continuously reached out to them to aggressively market Fairfield Sentry. "[G]iving advice on particular occasions does not alter the character of the relationship by triggering an ongoing duty to advise in the future (or between transactions) or to monitor all data potentially relevant to a customer's investment." *Kwiatkowski*, 306 F.3d at 1307. This is particularly true in the case of Almiron and Carrillo, each of whom initiated only a single transaction through SCBI. The Court thus dismisses Almiron and Carrillo's breach of fiduciary duty claims insofar as they are grounded on the existence of a

broker's ongoing duty to monitor nondiscretionary accounts.

### b. *The Lou Complaint*

As previously discussed, because the Lous fail to plead facts alleging that SCBI either recommended Fairfield Sentry or acted in an advisory role regarding the investment, the Lous' breach of fiduciary duty and gross negligence claims based on SCBI's failure to monitor are insufficient as a matter of law and, thus, are dismissed.

### F. *NEGLIGENCE*

■ SCBI contends that under Florida's "economic loss rule," Almiron and Carrillo's negligence claims must be dismissed because they relate to matters governed by a valid contract. The Florida Supreme Court has "clearly stated" that Florida's economic loss rule is limited to two situations: "(1) where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract, or (2) where the defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to any other property." *Curd v. Mosaic Fertilizer, LLC,* 39 So.3d 1216, 1223 (Fla.2010).

In the SCBI–Anwar Order, the Court traced the history of the economic loss rule and identified the conflicting interpretations of its application in the Florida lower courts. The Court noted that, because of these inconsistencies, the Florida Supreme Court, in *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,* 891 So.2d 532 (Fla.2004), "expressly limited" the rule's application to claims involving "professional malpractice, fraudulent inducement, and negligent misrepresentations, or freestanding statutory cause of action." *Anwar,* 745 F.Supp.2d at 374 (internal citations and quotation marks

omitted). The Court also recognized that lower courts in Florida have found exceptions to the rule, including causes of action for breach of fiduciary duty. Accordingly, the Court concluded that the economic loss rule did not bar the SCBI–Anwar Plaintiffs' claims for breach of fiduciary duty even though contracts governed those plaintiffs' relationships with SCBI.

■ Almiron and Carrillo argue that the economic loss rule does not foreclose their negligence claims because the Florida Supreme Court has recognized yet another exception to the rule for actions involving "neglect in providing professional services." *Moransais v. Heathman,* 744 So.2d 973, 982–83 (Fla.1999) ("[W]e again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services."). The Court disagrees. *Moransais* explicitly limits the "professional services" exception to the economic loss rule to vocations "requiring at a minimum a four-year college degree before licensing is possible in Florida." 744 So.2d at 973. Therefore, this exception is inapplicable to Almiron and Carrillo because "a securities broker is not a 'professional' for purposes of the economic loss rule because securities brokers are not required to obtain a four-year degree for licensing in Florida." *Warter v. Boston Sec., S.A.,* No. 03 Civ. 81026, 2004 WL 691787, at *13 (S.D.Fla. Mar. 22, 2004). As the "professional services" exception does not apply to Almiron and Carrillo, the economic loss rule precludes their negligence claims.

### G. *UNJUST ENRICHMENT CLAIMS*

■ Almiron and Carrillo also allege unjust enrichment. However, "[a]n unjust enrichment claim can exist only if the sub-

ject matter of that claim is not covered by a valid and enforceable contract." *In re Managed Care Litig.*, 185 F.Supp.2d 1310, 1337 (S.D.Fla.2002). The Court previously held that, because the complaints of the SCBI–Anwar Plaintiffs explicitly or implicitly referred to agreements between them and SCBI, their claims for unjust enrichment could not survive a motion to dismiss. *See Anwar*, 745 F.Supp.2d at 378–79. Almiron and Carrillo do not dispute that their complaints reference agreements governing their relationship with SCBI; yet they still assert claims for unjust enrichment.

"It is blackletter law that the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *In re Managed Care Litig.*, 185 F.Supp.2d at 1337 (internal quotation marks omitted). Almiron and Carrillo's failure to allege the *absence* of an adequate remedy at law requires that their unjust enrichment claims be dismissed. The Court has considered the other arguments supporting Almiron and Carrillo's unjust enrichment claims and finds them to be without merit. In the event that discovery reveals that the agreements in question are not valid or otherwise applicable, or do not bind all parties, Almiron and Carrillo may seek leave to assert their unjust enrichment claims.

## H. *LEAVE TO REPLEAD*

■ Though a court "should freely give leave" to amend "when justice so requires," Fed.R.Civ.P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet*

*Corp.*, 482 F.3d 184, 200 (2d Cir.2007) (citations omitted).

The Court has determined that several of Plaintiffs' allegations fail to state a claim, due primarily to failure to properly allege scienter and plead with the requisite specificity under Rule 9(b). It is therefore possible that as to some of these matters, repleading would be futile if based upon the same or similar allegations. The Court will grant leave to replead upon a request by Plaintiffs with sufficient new factual allegations and particulars plausibly showing how such repleading would correct the deficiencies identified in the Court's findings, and thus would not be futile. Plaintiffs may submit any such request within twenty-one days of the date of this Decision and Order.

## I. *CONCLUSION*

In sum, the Court dismisses (1) the claims of Almiron and Carrillo alleging (a) violations of § 517.301; (b) negligent misrepresentation; (c) breach of fiduciary duty based on failure to monitor; (d) negligence; and (e) unjust enrichment, and (2) the Lou Complaint in its entirety. The case will proceed only as to Almiron and Carrillo's claims alleging breach of fiduciary duty for failure to perform due diligence.

## III. *ORDER*

Accordingly, it is hereby

**ORDERED** that the motion (Docket No. 621) of defendants Standard Chartered Bank International (America) Ltd., Standard Chartered PLC, and StanChart Securities International, Inc. to dismiss the complaints of plaintiffs Ricardo Almiron, Carlos Carrillo, and Moises Lou–Martinez and Wong Yuk Hing De Lou (collectively, "Plaintiffs") is GRANTED in part and DENIED in part; it is further

**ORDERED** that Plaintiffs herein are granted leave to replead upon submitting to the Court, within twenty-one days of the date of this Decision and Order, in the form of a letter-brief not to exceed three pages, an application plausibly showing how such repleading would correct the deficiencies identified in the Court's findings discussed above, and thus would not be futile.

**SO ORDERED.**